BETSY VANCAMP, Plaintiff v. WANDA CARTER BURGNER, SAMUEL
RICHARD BURGNER, Defendants

No. 8915SC523

(Filed 19 June 1990)

**Automobiles and Other Vehicles § 89.1 (NCI3d)— striking
pedestrian—last clear chance—sufficiency of evidence**

The trial court erred in failing to submit the issue of
last clear chance to the jury where the evidence tended to
show that defendant driver had about two seconds reaction
time from the point when plaintiff pedestrian was still six
feet off the road; this was described as "ample reaction time"
by an accident reconstruction expert; defendant driver stated
that she did not see plaintiff until a "split second" before
impact when plaintiff had already been in the road for 3.5
seconds and crossed 14 feet of it; and there was adequate
evidence for a jury to conclude that, if defendant driver had
kept a proper lookout, she reasonably could have acted effec-
tively to avoid hitting plaintiff.

**Am Jur 2d, Automobiles and Highway Traffic §§ 475, 479.**

Judge Lewis dissenting.

APPEAL by plaintiff from judgment entered 22 February 1989
by *Judge B. Craig Ellis* in ORANGE County Superior Court. Heard
in the Court of Appeals 8 November 1989.

On 16 December 1986 at approximately 6:40 a.m., plaintiff as
a pedestrian proceeded to cross a street in Hillsborough, North
Carolina at a point where there were no traffic control signals
or a marked pedestrian crosswalk. Although it was still fairly dark,
the sky was beginning to lighten and the area was illuminated
by two street lights and a yard light. Plaintiff was wearing a
light colored coat. The weather was clear and the street was straight
with visibility unobstructed. Defendant was traveling slightly uphill
as she approached plaintiff. When plaintiff was at least three-quarters
of the way across the road and in the defendant's lane of travel,
defendant's automobile struck plaintiff and inflicted serious bodily
injury. Defendant-driver testified that she had her headlights on,
that she was traveling 20 to 25 miles per hour, and that she never
saw plaintiff until "a split second" before impact. She also stated

that she could not avoid hitting plaintiff because she did not have time to stop, but could only swerve to the left.

The plaintiff filed a complaint against Wanda Carter Burgner, the driver of the automobile, and her husband, Samuel Richard Burgner, co-owner of the automobile, alleging negligence. Defendants answered, denying negligence and alleging contributory negligence on the part of the plaintiff. Plaintiff filed a reply alleging last clear chance. The case was tried before a jury on the issue of liability and the trial court granted defendants' motion for directed verdict at the close of plaintiff's evidence. Plaintiff appeals.

*Blackwell & Lapping, by Jeff Blackwell, for plaintiff-appellant.*

*Babb and Barr, by Billy R. Barr, for defendants-appellees.*

JOHNSON, Judge.

The sole issue raised by this appeal is whether the trial court erred in deciding that the doctrine of last clear chance was inapplicable as a matter of law to the facts of the case. We find that the evidence required submitting the issue of last clear chance to the jury and the trial court erred in directing a verdict for defendants.

The plaintiff must prove the following four elements to be entitled to a jury instruction on last clear chance:

> (1) the pedestrian, by his own negligence, placed himself in a position of helpless peril, (2) the defendant was aware of, or by the exercise of reasonable care should have discovered, plaintiff's perilous position and his incapacity to escape, (3) the defendant had the time and means to avoid injury to the plaintiff by the exercise of reasonable care after he discovered or should have discovered the situation, and (4) the defendant negligently failed to use the time and means available to avoid injuring the pedestrian.

*Schaefer v. Wickstead*, 88 N.C. App. 468, 470-71, 363 S.E.2d 653, 655 (1988), *quoting, Watson v. White*, 309 N.C. 498, 308 S.E.2d 268 (1983).

There is no dispute that plaintiff, who has loss of right field of vision in both eyes, did place herself in a position of helpless peril. *Id.* The crux of the issue before us is whether defendant-driver, by the exercise of reasonable care, should have discovered

plaintiff's perilous position and her incapacity to escape in time to avoid injury.

The plaintiff's evidence included expert testimony from an accident reconstruction expert to the effect that the stopping distance for defendant's automobile on that street at the estimated speeds would be from approximately 29 to 42 feet, which, at the estimated speeds, would take less than one second. Headlights on low beam illuminate for approximately 300 feet and, for a roadway 18 feet wide, an object 6 feet off the highway would be illuminated from 150 feet away. The expert testified that the average reaction time for a driver is between 1 and 1.5 seconds. The expert also stated that the average walking speed of a pedestrian is 4 feet per second, and that that was also the speed he measured for plaintiff. Plaintiff was hit by defendant-driver when she had walked 14 feet into the road. Therefore, she was actually in the roadway for about 3.5 seconds before she was hit and was walking from 6 feet off the roadway 5 seconds before impact. The expert testified that, assuming the car was in a skid for the last second, and that the average driver has a reaction time of 1.5 seconds (or 2 seconds because of darkness), that defendant-driver had 2 seconds reaction time from the point when plaintiff was 6 feet off the road. He described this as "ample reaction time."

Two questions arise at this juncture. At what point in crossing the street was plaintiff in a position of "helpless peril," and what duty does a driver have to look outside of his own lane of travel? We disagree with defendants' argument that plaintiff was in no peril until she walked into defendant-driver's lane of travel. A pedestrian who is walking across the street, and is about to walk into the path of an oncoming car, and who does not see the car, is obviously in peril before she steps directly in front of the car. It is also plain to us that the driver of an automobile has a duty to look ahead outside his or her immediate lane of travel. In *Exum v. Boyles*, 272 N.C. 567, 158 S.E.2d 845 (1968), Justice Lake stated the following:

> For the present it is sufficient to note that a motorist upon the highway does owe a duty to all other persons using the highway, including its shoulders, to maintain a lookout in the direction in which the motorist is traveling.

*Id.* at 576, 158 S.E.2d at 852-53 (citations omitted).

Assessing the expert testimony with these principles in mind, and viewing all the evidence in the light most favorable to plaintiff, we think the evidence was sufficient to create a jury question regarding the application of the doctrine of last clear chance to this case. Even if defendant-driver were held not to have a duty to observe plaintiff until she entered the road, there would still be a jury question as to the application of the doctrine. We recognize, as defendant points out, that there is a distinction between last "clear" chance and last "possible" chance. *Sink v. Sumrell,* 41 N.C. App. 242, 249, 254 S.E.2d 665, 670 (1979). As this Court said in *Sink v. Sumrell,* "it must be such a chance as would enable a reasonably prudent man in a like situation to act effectively." *Id.* at 249, 254 S.E.2d at 670. Every case must turn on its particular facts. *Exum v. Boyles, supra.* In this case, we believe there is adequate evidence for a jury to conclude that if defendant-driver had kept a proper lookout she reasonably could have acted effectively to avoid hitting plaintiff. The trial court's finding that defendant-driver did all she could after seeing plaintiff begs the question of when defendant-driver reasonably should have discovered plaintiff and ignores the evidence that she could have seen plaintiff a few seconds sooner. It is noteworthy that defendant-driver stated that she did not see plaintiff until "a split second" before impact when plaintiff had been in the road for 3.5 seconds and crossed 14 feet of it.

We hold that plaintiff presented sufficient evidence to establish a *prima facie* case of last clear chance, and that the trial court erred in taking that issue from the jury and directing a verdict for defendants.

New trial.

Judge COZORT concurs.

Judge LEWIS dissents.

Judge LEWIS dissenting.

I respectfully dissent. I find the trial court did not err in granting defendants' motion for directed verdict and refusing to apply the doctrine of last clear chance at the conclusion of plaintiff's evidence. Plaintiff's evidence was insufficient to invoke the doctrine of last clear chance.

VanCAMP v. BURGNER

[99 N.C. App. 102 (1990)]

Both the majority and the appellee rely upon the testimony of an accident reconstruction expert to support their contention that defendant reasonably could have avoided hitting plaintiff. Using that same testimony, I conclude that, even though plaintiff may have had a last "possible" chance to avoid injury, she did not have the last "clear" chance. The distinction is significant, as the majority points out. Citing *Sink v. Sumrell*, 41 N.C. App. 242, 249, 254 S.E.2d 665, 670 (1979), the majority concedes: "We recognize, as defendant points out, that there is a distinction between last 'clear' chance and last 'possible' chance." However, the majority, stating that "[e]very case must turn on its particular facts," interprets those alleged "facts" presented by the accident reconstruction expert in a manner which requires "a reasonably prudent man in a like situation" to exercise a higher standard of care than that required by North Carolina law. *Id.*

The expert testified that "the average walking speed of pedestrians and . . . also the walking speed that I measured for [plaintiff]" was four feet per second. The accident occurred when plaintiff was fourteen feet into the roadway. Therefore, according to the expert's projections, it would have taken the plaintiff 3.5 seconds to reach the point of impact. According to the plaintiff's expert, the average reaction time for drivers at night is two seconds. The expert also stated that the time needed to stop defendant's vehicle after applying the brakes "would have been about one second." Under ideal conditions using the expert's projections, if the defendant had attempted to stop the car immediately, as soon as plaintiff entered the roadway, it would have taken defendant a total of three seconds to see plaintiff and then to stop her car before impact. This leaves only one-half of one second difference between the time that plaintiff reached the point of impact and the time required for defendant to be able to stop her car. These calculations are estimates made by a person who was not present at the time of the accident and who has relied on the "average" gait of pedestrians and of plaintiff, and has relied on "an average coefficient of friction" to determine the emergency stopping distance. The slightest variation in any of these "averages" could easily produce a different calculation with an additional one-half of one second. This is, I believe, an improbable last possible chance and certainly not a last clear chance to avoid the accident.

The majority and the plaintiff quote that portion of the expert's testimony in which the expert states that it takes "5 seconds for

the pedestrian to go from 6 feet off the pavement to the point of impact." Figuring a reaction time of two seconds and that the car was "in a skid for the last second," the expert stated "[t]hat still leaves an additional two seconds or ample reaction time for the driver to have seen the pedestrian. . . ."

The court in *Artis v. Wolf* examined a situation in which "no evidence indicates that [the defendant] should have expected [the plaintiff] to walk on into danger." 31 N.C. App. 227, 229, 228 S.E.2d 781, 782, *disc. rev. denied*, 291 N.C. 448, 230 S.E.2d 765 (1976). The same court held that the defendant "may have had the last 'possible' chance but he did not have the necessary last clear chance to avoid the accident." *Id.*

According to the majority: "The crux of the issue before us is whether defendant-driver, by the exercise of reasonable care, should have discovered plaintiff's perilous position and her incapacity to escape in time to avoid injury." The court in *Sink, supra*, defined the last clear chance doctrine, placing proper emphasis on the ability of the defendant to be able to avoid the accident:

In order for the last clear chance doctrine to apply, there must be evidence that a reasonable person under the conditions existing *had the time and means* to avoid injury to the imperiled person. . . .

41 N.C. App. at 249, 254 S.E.2d at 670. (Emphasis added.)

The decision of the trial court to grant defendants' motion for directed verdict was correct based upon the insufficiency of plaintiff's own evidence of last clear chance.